ROGERS, adm'r., vs. BROOKS.

1. HUSBAND AND WIFE: *Sale of the wife's land.*
   A contract on the part of the husband to sell the wife's land, though known and assented to by her, is not binding on her or her heirs. She can only bind herself by executing a deed in the form prescribed by law.

Rogers, adm'r, vs. Brooks.

2. JUDGMENT: *As affected by pleadings, prayer, etc.*

Where there is a prayer for specific, and also a prayer for general relief, the court may, if it refuse the specific relief, grant any other appropriate relief under the general prayer, but it cannot go outside of the case made by the pleadings, and grant relief as to matters improperly introduced in proof.

3. LEGAL HOLIDAY: *Fourth of July is not.*

The fourth of July is not a legal holiday, and a deposition taken on that day is good.

4. HUSBAND AND WIFE: *Control of rents derived from wife's land, etc.*

Where the marital rights of the husband are not restricted, he may dispose of the rents of the wife's land during his life.

CROSS APPEALS from *Phillips* Circuit Court in Chancery. Hon. W. H. H. CLAYTON, Circuit Judge.

*Garland & Cockrell*, for Rogers.

Error to allow Chamberlin to testify as to his *impressions* of conversations with Rogers, 13th Ark., 462, or to admit depositions taken against objections on the fourth of July. *Swinny* v. *Johnson*, 18 Ark., 534, or Brooks' statements of conversations or transactions with Rogers. *Giles* v. *Wright*, 26 Ark., 476; Am. Law. Rev. July, 1870, p. 656 (Howland will case).

Court will disturb a decree on weight of testimony. *Branch* v. *Mitchell*, 24 Ark., 443.

No part performance. 8 Ark., 272; 20 ib., 552.

No ground for lien on the land purchased of Trader.

*Rose and Palmer & Sanders*, for Brooks.

There was a resulting trust in favor of Rogers & Brooks. *Cook* v. *Bronaugh*, 13 Ark., 187; *Cain* v. *Leslie*, 15 id., 312; *Shields* v. *Trammell*, 19 id., 51; *Ferguson* v. *Williamson*, 20 id., 272.

Possession, sufficient part performance. *Blakeney* v. *Ferguson*, 8 Ark., 272; S. C., 20 id., 552, and making repairs and improvements. *Keatts* v. *Rector*, 1 id., 391.

Running the line, and holding accordingly was a good partition. *Jackson* v. *Bructh*, 2 Caines, 169; *Jackson* v. *Harder*, 4

Johns., 202; *Jackson* v. *Vosburg*, 9 id., 270; *Ryerss* v. *Wheeler*, 25 Wend., 434; *Walker* v. *Bernard*, 1 Carn & Nor. (N. C.), 82; *Hanghabaugh* v. *Harrold*, 1 Const. (S. C.), 701; *Wildey* v. *Bonney*, 31 Miss., 644; *Natchez* v. *Vandervelde*, id., 706.

ENGLISH, CH. J.:

In January, 1872, Wm. H. Rogers, as administrator of the estate of Mary Rogers, deceased, brought ejectment in the Phillips Circuit Court against Samuel H. Brooks for the south half of section fourteen, and the south half of section fifteen (except ten acres off of the north side of the southeast quarter of said section fifteen), township one south, range four east, 630 acres.

Brooks filed an answer and an equitable counter claim, alleging, in substance:

That early in February, 1868, plaintiff (Rogers) purchased of Willis Long the lands described in the complaint, for the consideration of $6300, of which sum he paid $4300 about the 18th of February, 1868, and the remaining $2000 was to be paid by taking up a mortgage for that sum, executed by said Willis Long to Arthur Slaughter, dated 22d January, 1866, which was a lien upon the lands; that plaintiff and his wife, Mary Rogers, took up the mortgage by executing their note to Slaughter for $2333.33, dated 18th February, 1868, payable 1st December, of the same year, and secured by deed of trust executed by them upon the lands to John J. Hornor. Copies of the deeds referred to are made exhibits.

That at the time of said purchase, plaintiff proposed to defendant to go in with him in the purchase of one-half the lands, and that the place should be equitably divided between them (though no time was set for such division). That in the division plaintiff was to have choice of parts, and the party getting the improvements, dwelling house, etc., was to pay their estimated value. To which proposition defendant agreed, and moved with

his family into the dwelling house on the place, where he had ever since resided. That about three weeks after defendant moved on to said place, plaintiff came to him and remarked that matters and things were very uncertain, and there was no telling what might happen, and that he believed he would take the deed to said lands in his wife's name, but that as between plaintiff and defendant that would make no difference; the deed should be made at the proper time.

That at the time of the first payment defendant furnished plaintiff with $808.19 of the purchase money paid by him, and that the remainder, plaintiff told defendant, came from a place he (plaintiff) sold in New York.

That it was a fraud on the part of plaintiff to take the title to said lands in the name of his wife.

That on the 1st of November, 1868, defendant paid plaintiff $2000, part of the purchase money for one-half of said lands, which was received by him as such, and a receipt given therefor, which is made an exhibit.

That in the year 1869, plaintiff and defendant became partners in the working of the said plantation, so purchased of Long, and the Pillow place, on the river some three miles below Helena, and continued working said places in partnership for the years 1869 and 1870, and that the partnership continued on the Long place for the year 1871. That during all of said time defendant furnished the supplies, teams, farming implements, and necessaries for carrying on said plantations, under an agreement with plaintiff that he should be allowed for all over one-half of the same, as a payment of the balance due upon said lands in the final settlement between them, and that there was no time fixed for the payment of said balance due, plaintiff stating that he did not care how long it remained unpaid, provided defendant would pay ten per cent interest.

That in marketing the crop of 1869, plaintiff overdrew more than the sum of $1,500. That in July, 1870, defendant paid plaintiff, of his own money, $300. That in September, 1870, defendant paid plaintiff, of his own money, $430, and on 16th November, 1870, $350.

That defendant as partner with plaintiff paid $400 interest each year to Arthur Slaughter, on the note secured by deed of trust as above stated, for the years 1869 and 1870, out of the partnership fund from the crops of those years. That he had paid all of the taxes due upon the lands purchased as aforesaid except those for the year 1871.

That there never had been a settlement between himself and plaintiff of the partnership affairs, although he had often applied to plaintiff to settle, and plaintiff had always evaded a settlement because he was largely in arrears.

That some two years after the purchase, the place was surveyed by the county surveyor for the purpose of division, and a plat of the survey is made an exhibit.

That the plaintiff made choice of the north part, leaving the south part, with the improvements, dwelling-houses, etc., to defendant, and which south part was valued to defendant by plaintiff at $4,000.

That the sum of $4,000 had long since been fully paid off and discharged, as would fully appear from the payments above recited, and a settlement of the partnership accounts between plaintiff and defendant.

That said Mary Rogers, wife of plaintiff, never paid one dollar of the purchase money for said place, and that the fraud perpetrated by plaintiff in procuring said Willis Long to make title to her should not be allowed to deprive defendant of his rights in the premises.

That Mary Rogers left two minor children, Kate and Alfred, her heirs at law.

That no written agreement was ever entered into between plaintiff and defendant in regard to said lands, nor had defendant any written evidence of title, etc.

That the division of the lands made by the surveyor, was agreed to and acquiesced in at the time by both plaintiff and defendant, and possession thereupon limited and narrowed accordingly.

That since the making of the survey defendant had not claimed any right or title to the lands north of the division line, except as a partner with plaintiff in the cultivation of the place up to the termination of the partnership, about the 1st of January, 1871, and since that time he had not claimed or been in possession of any part of the lands north of the division line.

That since the making of the division, plaintiff had excused himself from making a deed to the defendant for the part allotted to him, by saying that he could not do so until the deed of trust to Hornor was paid, until within a few months past, when he had claimed that defendant had no interest in said lands.

That defendant since he had been in possession of the premises had put about $1,300 worth of improvements upon dwelling-house, and had greatly improved the condition of the cleared land on the whole place, by building fences, opening ditches, clearing up briar patches, etc., all of which he had done because of his contract for the purchase of one-half of the place, and the agreement between the parties as to the particular land defendant should have.

Prayer that plaintiff and Kate and Alfred Rogers be required to answer, etc.; that the deed from Willis Long to Mary Rogers be declared to be a fraud upon the rights of defendant and void. That she be declared a trustee of the lands for her husband (the plaintiff) and the defendant. That an account be taken by the

Master, of the partnership matters between plaintiff and defendant. That the payments made by defendant to plaintiff be applied to the payment of the purchase money for said half of said lands, and the balance found due upon the accounting aforesaid be applied to the payment of the residue. That a commissioner be appointed to make a deed to defendant for the south halves of the south halves of sections 14 and 15, in township 1 south, range 4 east. That defendant have judgment against plaintiff for the balance due him on said accounting, to be paid out of the plaintiff's half of said lands, and for other proper relief.

Exhibit A, to the answer, etc., is the deed from Willis Long and wife to Mary Rogers for the land described in the complaint. It bears date 14th February, 1868, recites the payment of $6,300 in cash to Long by her as the consideration, and conveys the lands to her and her heirs and assigns forever. It was acknowledged on the day it bears date, and filed for registration in the office of the recorder of Phillips county, on the 28th February, 1868, and duly recorded.

Exhibit B, to the answer, is the mortgage made by Long upon the same lands, to Arthur Slaughter, to secure $2,000, with ten per cent. interest, bearing date 2d January, 1866, and referred to in the answer.

Exhibit C, to the answer, is the deed of trust made by Rogers and wife upon the same lands, to John J. Hornor, as trustee, to secure a note executed by them to Arthur Slaughter for $2,333.33, recited to be part of the purchase money of the lands. The note and trust deed bear date 18th February, 1868, and the former was payable 1st December following, and the latter was acknowledged on the 20th and registered 28th February, 1868.

Exhibit D, to the answer, is as follows: "Helena, Nov. 1st, 1868. Rec'd of Samuel H. Brooks two thousand dollars to apply on purchase money for farm. W. H. Rogers."

Exhibit E, to the answer, is the surveyor's plat showing a division of the lands between Wm. H. Rogers and Brooks.

The plaintiff, as administrator of Mary Rogers, and guardian of her minor children, Kate and Alfred, filed replication to defendant's answer, etc., in substance as follows:

He admits that about the 18th February, 1868, he purchased of Long the lands sued for, for $6,300, of which he paid $4,300 in cash, and the remaining $2,000 by taking up a mortgage for that sum executed by Long to Slaughter, which was a lien on the lands, and which he took up by the note of himself and wife to Slaughter, for $2,333.33, secured by the deed of trust to Hornor mentioned in the answer.

Admits that at the time he was negotiating for the purchase of the lands he proposed to defendant that he should purchase one-half of them, and that they should be equitably divided; that plaintiff should have choice for his wife (Mary Rogers), and that the party getting the dwelling house and improvements should pay their estimated value; but denies that defendant ever agreed thereto, or that he moved with his family on to the place with any such understanding. On the contrary, avers that at the time he made the proposition to defendant to purchase, defendant said he was unable to make the purchase, had not the means to pay for the same, but that if the plaintiff would purchase the lands, defendant would cultivate them during the year 1868, and pay as rent therefor, the taxes which should be assessed thereon for that year, and ten per cent. upon the cost of the lands; and urged the plaintiff to make the purchase and let him go on the lands, saying he did not know what to do; and that defendant in fact moved upon the lands as the tenant of Mary Rogers, and not otherwise.

Denies that some three weeks, or at any time after the purchase, he told defendant that he would take the deed for the lands

in his wife's name, but that it would make no difference as between him and defendant, or that he said anything of that purport to defendant. On the contrary, avers that he made the purchase in the name of his wife, the deed was made to her before any payment was made on the lands, and that the deed was filed for record 28th February, 1868, the day on which he completed the payment for the lands by paying off a judgment in favor of W. H. Johnson & Co. against Long for $3550, as would appear by the receipt of Tappan & Hornor, attorneys for Johnson & Co., made an exhibit.

Denies that at the time he paid Long for the lands, defendant paid him $808.19, or any other sum, or that one dollar of defendant's money went, either directly or indirectly, into the payment made to Long, or in paying off said judgment, or that plaintiff had in his possession or under his control any money belonging to defendant, until after said purchase was fully consummated, and the deed received, and after the lands had been rented to defendant for the year 1868, and he had gone into possession thereof.

That some weeks after the purchase had been made, and the lands rented to defendant, he did deposit with plaintiff about $800 for safe keeping, defendant believing it not to be prudent to keep that much money in the country, and the money so deposited with plaintiff was to be paid out by him on the order of of defendant; and plaintiff did pay out upon the direction of defendant the sum of $1129.75, and he denies that one cent of the deposit went into the purchase of the lands, etc.

He admits that he did receive a portion of the money paid for the lands from a sale made by him of a place in New York, and may have so told defendant. Denies that the taking of the deed in the name of his wife, Mary Rogers, was a fraud upon defendant or any other person, not upon defendant certainly, because he had no rights in the premises.

States that about the first of May, 1868, he told defendant he would sell him one-half of the lands when they were paid for, if it was agreeable to all parties, and defendant then agreed for the first time that he would purchase if everything succeeded as he expected; but no money was paid, no note or memorandum in writing entered into; it was simply a verbal agreement entered into between plaintiff and defendant; and at that time defendant knew that the title to the lands was in Mrs. Rogers, the deed having been filed for record for six weeks previously.

Admits that about the 1st November, 1868, defendant paid him $2,000, and some months afterwards (no receipt having been given at the time) he gave defendant a receipt for said sum as a part of the purchase money for one-half of the lands, which receipt is made Exhibit D, to the answer.

States that in the year 1868, said plantation was cultivated by defendant, and his brother, Thomas B. Brooks, and neither plaintiff nor his wife had any interest in the cultivation of the place.

Admits that in the year 1869, he and defendant were partners in working said plantation and the Pillow place, and continued working said places for the years 1869 and 1870, and that on the Long place the partnership continued for the year 1871. But denies that during the time of the partnership, defendant furnished the supplies, teams, farming implements and necessaries for carrying on said plantations, under the agreement, as stated in the answer. Admits that he did furnish part of them, the balance being furnished out of the funds of plaintiff and the joint funds of plaintiff and defendant.

Admits that at the time he proposed to sell defendant part of the lands, he said to him that he was not particular about the time of payment, so long as defendant paid ten per cent. interest.

Denies that he ever did sell any part of the land, or that it was any more than an agreement to sell at some future time, if it should then be agreeable to both parties.

Denies that he overdrew of the proceeds of the crop of 1869 the sum of $1,500, or any other sum.

Denies that defendant paid him at the times stated in his answer, or at any other time, the several sums of money, or any, or either of them, or any part thereof, as stated.

Admits that he and defendant paid $400 each year to Slaughter, but avers that it was a part of the agreement in cultivating the said lands, that the interest to Slaughter and the taxes should be paid out of the joint funds. That the partnership was commenced with the year 1869, and continued until January, 1872. That the proceeds of the plantation was used to purchase stock, farming tools, steam engine, etc., and defendant agreed to pay the taxes for the year 1870, out of his fees as treasurer, but failed to do so and plaintiff had to pay them, with the penalty of fifty per cent added.

Admits that there never has been a settlement of accounts between himself and defendant, but denies that he refused or evaded a settlement, or that defendant ever applied to him for one. On the contrary, he applied to defendant for a statement of accounts, in order that they might settle, and defendant neglected and refused to make it. This was in June or July, 1871, and when defendant refused to settle, plaintiff offered him $5,000 if he would surrender possession of the said plantation, crop, etc., on the 1st of September, 1871, and leave all stock, etc., purchased with the partnership funds. His sole object in offering so large a sum was to avoid a lawsuit, not because it was due to the defendant.

Admits that said lands were surveyed by the county surveyor (Trunkey), and it was agreed that in the event the sale should be consummated, they were to be divided by defendant taking the south part, but denies that any valuation was placed upon it.

States that he had, long prior to the purchase of said lands of Long, used a sum of money inherited by his wife from the estates of her father and mother. That the money which paid for said lands was realized from said source, and from the joint labor of himself and wife. That the taking of the deed in the name of the wife was no fraud upon any person, and certainly not upon defendant, who had no right or interest therein.

Admits that his wife left the two minor children, Kate and Alfred, her heirs at law, etc.

States that no written memorandum was entered into between himself and defendant in regard to the purchase of the lands, because no sale or purchase was made or agreed to be made.

Denies that he had acquiesced in the rights of the defendant to the possession of any portion of said lands, except as partner with himself in the cultivation thereof.

Denies that he has ever claimed title to any portion of said lands except in right of his wife.

Denies that he had ever excused himself from making a deed to defendant for any part of said lands, or that he ever agreed to make him a deed, etc. He refused to make any sale until the lands should be fully paid for, and then only upon condition it should be agreeable to all parties.

Denies that defendant had put $1,300 worth of improvements on the dwelling house. Admits it had been repaired, but avers that the plaintiff furnished the lumber, paint, oil and nails, to make such repairs. Denies that any repairs had been made on the fences, or ditches, other than such ordinary repairs as would be required of a tenant.

Avers that in all his transactions with defendant, plaintiff acted for himself alone, and that his wife refused absolutely to sell or agree to sell such lands, or any part thereof to defendant, and again denies that he ever sold any part of said lands to

defendant, but says there was a talk about a sale at some future time, which was never agreed upon, and which his wife repudiated and would not consent to.

The cause was heard on the above pleadings, and depositions taken by the parties, and the court found the facts to be, and decreed as follows:

The court found that on the 14th February, 1868, Mary Rogers purchased of Long the lands described in the complaint, and that they were, on that day, conveyed to her by Long and wife. That the consideration was paid by plaintiff and wife, and that the lands were not held by the wife as trustee for defendant Brooks, he having paid no part of the purchase money, and having entered into possession as the tenant of Mrs. Rogers.

That in November, 1868, defendant paid plaintiff $2,000, which was intended by defendant to be a part payment for one half of the lands, so purchased from Long, but that plaintiff appropriated the money to purchase a tract of 110 acres of land from Wm. H. Trader and wife.

That in the years 1869, 1870 and 1871, plaintiff and defendant were in possession of the lands in controversy as copartners, and that the interest upon the note to Slaughter, which was a part of the consideration paid to Long for the lands, and the taxes for 1869, were paid out of the partnership funds, and that the taxes for 1870, with the penalty added, were paid by plaintiff, and also the taxes for 1871 and 1872, one half of which should have been paid by defendant.

That defendant was chargeable with one half of the rent of said lands for the years 1872 and 1873. That the rent agreed to be paid was the taxes and the interest on the Slaughter debt, being $400 per annum, and ten per cent. on $4,300, or $430 per annum. That the taxes amounted to $1,447.10, one half being

$723.55, and the one half the rent for said years 1872 and 1873, being, with taxes, $1,583.55.

That defendant put improvements on the dwelling house to the value of $1,300, of which sum plaintiff paid $360, leaving $940 paid by defendant.

That after deducting the value of the rents due from defendant, there was due to him from plaintiff, on account of improvements on dwelling house, and the amount paid to plaintiff in November, 1868, the sum of $1,356.45, which was a lien on said tract of land purchased by plaintiff of Trader and wife, being 110 acres.

That plaintiff, as administrator of Mary Rogers, was entitled to possession of the lands described in the complaint.

It was thereupon decreed, that plaintiff, as such administrator, recover of defendant the said lands, etc., that the costs be mutually paid by plaintiff and defendant, and that a writ of possession issue, etc. To which decree defendant excepted and appealed.

The court further decreed that defendant recover of plaintiff (Wm. H. Rogers) said sum of $1,356.45, and that the same was a lien on the 110 acres of land so purchased of Trader and wife, and unless said sum should be paid by a day named, the land should be sold by a commissioner, etc. To which decree, for $1,356.45, and declaring the same to be a lien on said tract of land, Rogers excepted and appealed to this court.

On the appeal of Brooks :

The answer of Brooks, was in the nature of a bill for specific performance against the administrator and heirs of Mrs. Rogers. He also claimed a personal decree against Rogers for an alleged amount overpaid upon one-half of the lands.

The substance of so much of the answer as seeks specific performance is, that he entered into an agreement with Rogers to
    *Vol. xxx.—40.*

purchase the lands of Long, each to pay one half of the purchase money, and divide the lands between them. That he furnished Rogers part of the money at the time the lands were purchased of Long, and went into possession, etc. That Rogers, in fraud of the agreement, had the lands conveyed to his wife, but deluded him into making further payments, by promises that he should have a deed to one half of the lands. That a partition line was agreed upon between them, that he made improvements and overpaid for one half of the lands, and that Mrs. Rogers died, holding the legal title in trust, etc.

The reply of Rogers, as administrator of his wife and guardian of his heirs, denies, and puts in issue the material allegations of the answer, by which, Brooks seeks to be invested with the legal title of the wife to one half the lands.

The cause having been transferred to the equity side of the court below, the court found, upon the evidence, against the claim of Brooks to one half of the lands, and decreed possession of the whole of the lands, without rents, to Rogers as the administrator of his wife.

The depositions of the parties were contradictory, of course, as their pleadings were.

Brooks claimed that he furnished Rogers about $800 to aid him in making the cash payment to Long, before the deed was made by Long to Mrs. Rogers. Rogers denies this, and says that the money was merely deposited with him for safe keeping, and afterwards paid out, and over paid, on the direction of Brooks. Rogers furnished an itemised account of the sums paid out by him. Brooks signed a written admission that Rogers had paid out for him one item of $303, in March, 1868, and another item of $90 in the following July. He and his brother both say in their depositions that Rogers was furnished with about $800 to help to pay for the lands, but they do not contradict the statement of Rogers that he paid out over that sum for Brooks.

Brooks avers and swears that he moved on to the lands under his agreement with Rogers to purchase one half of them.

Rogers denies this, and says that he went on to the lands as a tenant.

Willis Long, who seems to have been a disinterested witness, deposed that he sold the lands to Rogers, who paid to and for him the purchase money, and that he made the deed to Mrs. Rogers. That Brooks was a stranger to him, and he did not know Brooks in the transaction. That Brooks moved on to the lands before he moved off. That he regarded him as the tenant or manager of Rogers. That he did not then claim any interest in the lands, but said that he expected at some time to buy a part of the lands of Rogers, but did not say there was any agreement or understanding between them about his buying a part of the lands. This was after the deed was made to Mrs. Rogers.

There can be no doubt from all the evidence that, at some time after the lands were conveyed to his wife, and as early at least as the 1st November, 1868, Rogers contracted with Brooks, verbally, to sell him one half of the lands, and induced him to make the payment of $2000 of that date, and subsequent payments, by promising that a deed should be made to him. The evidence also conduces to prove that they had the lands surveyed and a dividing line run, and that the understanding between them was that Brooks was to have the south part of the lands.

But Rogers could not bind his wife or her heirs by a contract to convey the legal title to any part of her lands.

It is probable, from the evidence, that Mrs. Rogers in her life time, knew of the contract between her husband and Brooks, and was satisfied with the division line which seems to have been · agreed upon between them. But this did not entitle Brooks to enforce a specific performance of the contract as against her or her heirs. She could only bind herself, or her heirs, by a deed

of conveyance, executed according to the forms prescribed by law, and this Brooks failed to obtain. *Wood and wife* v. *Terry et al., ante.,* and cases cited.

The evidence fails to show that Brooks had fully paid Rogers for one-half of the lands, as alleged in his answer, but it does appear that he had paid a larger amount than was decreed to him by the court below, as we shall presently see.

On the appeal of Rogers :

It was proven that Rogers purchased with the $2000 paid him by Brooks November 1st, 1868, of Trader and wife, a tract of 110 acres of land adjoining the lands in controversy, and the court below charged as lien upon this outside tract, the sum of money found to be due from Rogers to Brooks, and decreed a sale of the land, etc.

There was nothing in the pleadings to warrant this decree. This outside tract was not the subject of litigation. It was not mentioned in the answer or reply.

" Where there is a prayer for specific relief, and also a general prayer for relief, if the state of case as presented by the bill should not be sustained in evidence, or the court should, upon principles of equity, refuse the specific relief, it may, notwithstanding, give to the complainant, under the general prayer, any relief as warranted by the facts as set forth in his bill. But, although it may, from the proofs, be apparent that the complainant is entitled to other relief, yet, unless the bill is so framed as to put such facts at issue, the court will not decree such further relief, for it would be decreeing upon an issue not before the court, and to which the proofs could not properly apply, and would tend to surprise the defendant." *Cook* v. *Bronaugh,* 13 Ark., 187.

Brooks took the depositions of himself and Thomas B. Brooks and Frank Turnkey, the surveyor, on the 4th of July, 1873,

upon notice previously given. The counsel of Rogers was present; protested against the taking of the depositions on that day; declined to cross-examine the witnesses, and, after the depositions were returned, filed a motion in court to suppress them. The court overruled the motion to suppress the depositions, but made an order for cross-examination by Rogers.

The fourth of July was unknown to the common law as a holliday, and though venerated by the Americans, as a memorable day in their political history, is, perhaps, but little reverenced by the English, from whom we obtained the common law.

It is a legal day (except when it happens to fall on Sunday) for the transaction of all business, unless otherwise provided by statute.

Section 5, chapter 173, Gould's Digest, prohibited the service of any writ, warrant or order, on the fourth of July, except in criminal cases, for breach of the peace, or where the defendant was about to leave the country, which had to be shown by affidavit. Ib., sec. 7.

In *Swinney* v. *Johnson*, 18 Ark., 534, the court held that the service of civil process on the fourth of July was bad, unless the return showed that the affidavit required was made and delivered to the officer.

This case is cited by counsel for Rogers to show that the court below should have sustained the motion to suppress the depositions taken on the fourth of July.

But section 4833, Gantt's Digest, (part of the civil code) provides, that "a summons, subpœna, notice or order of arrest of injunction, may be executed on any holiday, except Sunday," etc.

We have no statute prohibiting the taking of depositions on the fourth of July, though it is not in good taste for litigants to fix upon that day for taking their depositions, unless required by some emergency.

The court below found from the evidence, that Rogers was indebted to Brooks in the sum of $1,356.45.

The pleadings are inaccurate and contradictory as to the accounts between Rogers and Brooks. The depositions are also contradictory, and vague and uncertain as to dates, amounts, etc. The findings of the court below, as recited in the decree, are by no means clear.

The counsel for Rogers here attempted to get clear of the decree against him for the above sum, by insisting that three of the depositions of Brooks should have been suppressed by the court below, because taken on the fourth of July, and should be disregarded here ; and the counsel for Brooks, have devoted their brief to his claim to one half of the lands, so that the counsel on neither side have aided us in getting at what should be a just settlement of accounts between the parties.

We have referred the case to the clerk of this court, as a master, to take and state an account between the parties as best he could from the pleadings and evidence, and he has made the following report :

"That, assuming the statement of the court below, as to the several claims between the parties, to be correct, and in which he cannot, upon this record, perceive any serious error except in the omission to allow interest on the two thousand dollars paid by Brooks to Rogers on the 1st of November, 1868, he restates the account, upon the items found by the court, allowing such interest, as follows:

1868, Nov. 1, To amounts paid by Brooks
  to Rogers...................................... $2,000 00
Int. to Jan., '73, when rent for '72 fell due..    500 00
                                                 _____
                                                 $2,500 00
Deduct rent for 1872, being one-half of
  $1,583.55 as found by the court...........       761 77
                                                 _____
                   *Carried forward,*            $1,738 23

| | | |
|---|---:|---:|
| *Brought forward,* ................................ | $1,738 | 23 |
| Interest for one year to 1st January, '74..... | 106 | 29 |
| | $1,844 | 52 |
| Deduct rent for 1873 the other one half of $1,583 55........................................ | 761 | 77 |
| | $1,082 | 75 |
| Add improvements made by Brooks......... | 940 | 00 |
| | $2,022 | 75" |

Though Rogers could not contract away the title of his wife to any part of the lands, so as to bind her and her heirs, there being nothing in the deed from Long to her to exclude his marital rights, he could, as he did, dispose of the rents during her life time, and bind himself to pay for improvements, etc.

On the whole decree and upon both appeals :

So much of the decree of the court below as is in favor of Rogers as administrator of his wife, for possession of the lands in controversy, must be affirmed.

The remainder of the decree must be reversed, except as to costs in the court below, and a decree entered here in favor of Brooks against Rogers personally, for the sum of $2,022.75, as of the date of the decree below, and the costs of this court must be equally divided between the parties, including an allowance to the master.